UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/2/2026

-------------------------------------------------------------------- X

   :

MICHAEL P. GOODMAN,   :

   :

                Plaintiff,   :        1:21-cv-10902-GHW

   :

        -against-   :

   :       MEMORANDUM

GILA GOODMAN *also known as* GILA DWECK   :    OPINION & ORDER
*also known as* GILA DABAH, AND JANE DOE 1-   :
20,   :

             Defendants.   :

-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Michael P. Goodman and his wife Gila Dabah are involved in a contentious divorce proceeding in New York state court. Mr. Goodman filed this federal action to pursue claims that Ms. Dabah accessed his computer and recorded his phone conversations after the couple separated. The build up to trial in this case was long, but unusual—during the discovery period, Plaintiff conducted no depositions and took no steps to pursue responses to discovery requests from Defendant. In May 2025, the Court denied a motion by Defendant to dismiss the case for failure to prosecute as a result of Plaintiff's torpor and scheduled the case for trial on January 6, 2026.

The Court held a pretrial conference on December 16, 2025 to discuss a pending *motion in limine*. As the Court was adjourning the December 16, 2025 conference, Mr. Goodman's counsel raised, for the first time, the fact that Mr. Goodman was prohibited from entering the United States and that he might not be able to attend the trial in person. On December 22, 2025—only two weeks before trial—Mr. Goodman filed this motion requesting that the Court to allow him to testify at trial remotely pursuant to Federal Rule of Civil Procedure 43(a). He argued that his inability to reenter the country for trial constituted good cause and compelling circumstances to permit him to

do so.  But he provided no justification for his failure to secure the testimony by deposition or any other means.  Because Mr. Goodman has known that he cannot enter the United States for years and failed to make any effort to obtain his testimony by deposition or other means throughout the four-year history of this litigation, notwithstanding the fact that he is represented by a national law firm and lack of any apparent financial constraints, Mr. Goodman's motion is DENIED.

## II.    BACKGROUND

Mr. Goodman and his wife, Gila Dabah,[1] have been battling in a divorce proceeding in New York Supreme Court since 2020.  Dkt. No. 25 ("SAC") ¶ 26.  That proceeding has not yet been resolved.  Mr. Goodman filed this action on December 20, 2021.  Dkt. No. 1.  Mr. Goodman was—and remains—represented in the action by a team of lawyers from the law firm of Nixon Peabody, LLP.  In this action, Mr. Goodman asserted several claims against Ms. Dabah under federal and state law, including for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Protection Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq*., and the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq*.  *See generally* SAC.

Most of the events at issue in the complaint occurred early in 2020, shortly after Ms. Dabah served Mr. Goodman with divorce papers, and as the couple navigated between their beach house in Loch Arbour, New Jersey and their apartment at 521 Park Avenue in Manhattan (the "Park Avenue Apartment").  SAC ¶¶ 21, 23.  Among other things, Mr. Goodman alleged that Ms. Dabah accessed data stored on a computer that he had left at the couple's beach house.  *Id.* ¶¶ 28-62.  He alleged that she was able to access privileged email communications from his Microsoft Outlook account—all, he alleged, to obtain an advantage in their divorce proceedings.  *Id.* ¶ 64.

---

[1] The Court understands that the defendant, named in this action as Gila Goodman a/k/a Gila Dweck and Gila Dabah, prefers to be referred to as Gila Dabah, rather than by her marital name.  The Court adopts that convention for purposes of this opinion.

Mr. Goodman also alleged that Ms. Dabah surreptitiously recorded his telephone conversations.  In particular, Mr. Goodman alleged that on June 5, 2020 she recorded his conversations "for almost three minutes" while standing outside of the door of the Park Avenue Apartment.  *Id.* ¶¶ 138, 141.  During that time, Mr. Goodman was "walking back and forth in the gallery" of the Park Avenue Apartment, "including right up to his front door."  *Id.* ¶ 145.  He alleged that Ms. Dabah recorded two conversations—one "with his attorney of record in the ongoing divorce proceeding," and the other with his "Rabbi discussing, *inter alia*, his ongoing divorce proceeding."  *Id.* ¶¶ 143, 145.

On December 21, 2021, the Court referred this case to Magistrate Judge Robert Lehrburger for general pretrial management and for dispositive motions requiring a report and recommendation.  Dkt. No. 3.  On June 16, 2022, Ms. Dabah, represented by a team of attorneys from Kirkland & Ellis, LLP, moved to dismiss the complaint.  Dkt. No. 26.  On August 29, 2022, with the motion pending, Judge Lehrburger entered a civil case management plan and scheduling order.  Dkt. No. 32.  Pursuant to the scheduling order, fact discovery in this case was to be completed by January 27, 2023, and all discovery was to be completed by March 31, 2023.  *Id.* at 3-4. Discovery was not stayed as a result of the motion to dismiss.

On December 21, 2022, Judge Lehrburger issued a Report and Recommendation recommending that the Court grant in part and deny in part Ms. Dabah's motion to dismiss.  Dkt. No. 35.  The Court adopted Judge Lehrburger's conclusions over Plaintiff's objections.  Dkt. No. 46.  In doing so, the Court dismissed all of Plaintiff's claims with prejudice except Plaintiff's claim under EPCA, which arose from Ms. Dabah's alleged recording of Mr. Goodman as he perambulated the gallery of his Park Avenue Apartment.

The Court understands that both parties propounded discovery requests during the discovery period established by Judge Lehrburger's scheduling order.  However, neither party

brought any discovery-related disputes to the attention of the magistrate judge during the discovery period; in particular, neither party sought to compel production of discovery by their adversary. And neither party sought an extension or modification of the discovery schedule, which required that discovery be "completed" by March 31, 2023.

On September 6, 2023—almost seven months after the Court's order adopting his report and recommendation, and five months after the deadline scheduled for the completion of discovery, Judge Lehrburger issued an order requesting a status update from the parties. Dkt. No. 47. In that order, Judge Lehrburger wrote: "Although fact and expert discovery have closed (see Dkt. 32), the parties have filed nothing since February 2023. Accordingly, the parties shall jointly file a status update by September 13, 2023." *Id.*

The parties filed a joint response on that date, which was composed by counsel for Defendant. Dkt. No. 48. In it, the parties requested a stay of 60 days as a result of proceedings in the related matrimonial action and the prospect of global settlement discussions. Counsel for Defendant wrote that if no settlement was reached by the time of the expiration of the stay, the "parties shall then file a joint status update informing the Court whether a settlement has been reached or, if not, of the parties' positions on a revised case schedule." *Id.* In their letter, the parties raised no issues with respect to the discovery process for resolution by the court, regarding outstanding discovery requests or otherwise. Neither party requested an extension of the discovery period, even though Judge Lehrburger's order clearly stated that the discovery period had closed. Judge Lehrburger granted the application for a stay later the same day. Dkt. No. 49.

This was the first of several applications by the parties for a stay of the proceedings in this case so that they could focus on the divorce proceedings in state court. On November 14, 2023, at the request of the parties, given "the overlapping issues in the matrimonial action and this proceeding, as well as the possibility of a global settlement between the parties," Judge Lehrburger

4

first extended the stay for 45 days.  Dkt. Nos. 50, 51.  By letter dated December 28, 2023, the parties again requested that Judge Lehrburger extend the stay in this case.  Dkt. No. 52.  In that letter, Defendant noted that she "intend[ed] to depose Plaintiff" once the stay was lifted.  *Id.*  And Plaintiff asserted that he "had served written discovery on Defendant which remains [sic] outstanding[] and noticed Defendant's deposition which has not yet occurred either."  *Id.*  Judge Lehrburger granted the request to extend the stay and used the opportunity to remind the parties that discovery had closed:  "As to the prospect of additional discovery in the event the stay is lifted, the Court reminds the parties that both fact and expert discovery closed long before the case was first stayed."  Dkt. No. 53.

Meanwhile, the trial in the matrimonial action was completed.  On February 26, 2024, the parties wrote to Judge Lehrburger to inform him that the parties were "awaiting a ruling in the matrimonial action and a post-trial briefing schedule."  Dkt. No. 54.  Plaintiff requested an extension of the stay for another 60 days to permit the conclusion of the matrimonial action and the resumption of settlement discussions.  *Id.*  Judge Lehrburger granted Plaintiff's request, Dkt. No. 55, and did so twice again to permit the proceedings in the state court action to advance.  Dkt. Nos. 57, 59.  The last of Judge Lehrburger's orders extended the stay for a "final time" to August 28, 2024.  Dkt. No. 59.

In a September 6, 2024 status letter to Judge Lehrburger, counsel for Defendant wrote that if the case was not resolved, "Defendant intends to file a letter with the Court requesting a pre-motion conference and indicating her intent to file a summary judgment motion.  At that time, the parties can propose a summary judgment briefing schedule."  Dkt. No. 60.  On September 24, 2024, Defendant's counsel did just that—counsel filed a letter proposing a briefing schedule for summary judgment motion practice.  Dkt. No. 61.  After soliciting the parties' views, Judge Lehrburger

established a schedule for any summary judgment motion practice on October 7, 2024.  Dkt. No. 65.  In accordance with it, motions for summary judgment were due on November 6, 2024.

Just two days before the deadline for summary judgment motions, Defendant's counsel filed a letter stating that "Defendant no longer intends to file for summary judgment at this time, though Defendant reserves all rights.  Instead, Defendant intends to file a motion to dismiss the case under Federal Rule of Civil Procedure 41(b)."  Dkt. No. 66.

On November 13, 2024, Defendant filed a motion to dismiss the case for failure to prosecute.  Dkt. Nos. 69–71.  In her motion, Defendant argued that dismissal was appropriate because Plaintiff failed to take any discovery related to his one remaining claim under the ECPA during the discovery period.  Dkt. No. 70 at 2-3 ("During that time, Plaintiff did not make any efforts to pursue discovery or otherwise develop his ECPA claim.").  On December 13, 2024, Plaintiff filed his opposition.  Dkt. No. 72.  In his opposition, Plaintiff did not dispute that he failed to use the opportunity to conduct discovery but argued that dismissal was an inappropriate sanction. *Id.*  In particular, he argued that Defendant had "entirely failed to articulate how the alleged failure of Mr. Goodman to pursue discovery . . . is likely to prejudice her. . . ." *Id.* at 11.  Mr. Goodman concluded his opposition with a request that the Court grant him a "reasonable opportunity to complete discovery," but did not brief the question of whether good cause existed to modify the discovery schedule. *Id.*

On May 19, 2025, the Court denied Defendant's motion to dismiss Plaintiff's claim as a result of his failure to prosecute the case.  In its decision, the Court considered in turn each of the factors laid out by the Second Circuit in *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999).  The Court concluded that the factors weighed against dismissal of the action.  Of particular significance here, the Court observed the following:

> [T]o the extent that Plaintiff elected not to take more discovery or to pursue
> its discovery requests more fully, it was not required to do so.  Judge Lehrburger's

> discovery schedule gave the parties the opportunity to take discovery.  It did not mandate how the parties should use that time.  Plaintiff was free to choose not to take discovery during the discovery period.  An informed decision by Plaintiff, represented by competent counsel, not to expend resources during the discovery period does not represent a failure to prosecute, much less one that harms Defendant.

Transcript of May 19, 2025 Conference ("May Tr.") at 11:23–12:7.  The Court denied Plaintiff's request to reopen discovery without prejudice because general pretrial management—including the discovery schedule—was referred to Judge Lehrburger.  *Id.* at 19:15–18.  The Court left it to the parties to make any such application to Judge Lehrburger.  *Id.* at 21:23–15; 24:5–17.  Neither party made such a request.

On May 23, 2025, the Court issued a scheduling order setting a jury trial in this matter to begin on January 5, 2026—nearly eight months later.  Dkt. No. 79 (the "Trial Order").  Pursuant to that order, the deadline for parties to submit a joint pretrial order, proposed jury instructions, voir dire questions, motions in limine and other pretrial submissions was October 17, 2025—almost five months after the Trial Order was issued.  *Id.*

October 17, 2025 came, but Mr. Goodman failed to meet the deadline.  Instead, on that day, his counsel filed a letter requesting an extension of the deadline by a week.  Dkt. No. 80.  The letter was late under the Court's Individual Rules of Practice ("Individual Rules"), which require that motions for extensions of time to be made no later than two business days prior to the date sought to be extended.  In a letter filed in response, Defendant's counsel explained that Plaintiff's counsel had informed them that "they had been unable to reach their client to discuss the joint pre-trial submissions. . . .  In light of Plaintiff's failure to provide any reasons for their failure to make a request for an extension at least two business days prior to the deadline, as required . . . , Defendant did not agree to the requested extension.  Defendant remains concerned about Plaintiff's continued failure to prosecute, and Plaintiff's counsel's indication of their inability to contact their client."  Dkt. No. 81 at 1–2.  As a result, Defendant filed her pretrial submissions timely on October 17,

2025.  But because Plaintiff had failed to collaborate in the process, Defendant's submissions were submitted unilaterally, rather than jointly, as required by the Court's Trial Order and Individual Rules.

On October 20, 2025, the Court issued an order scheduling a conference to discuss Mr. Goodman's untimely request for an extension of the deadlines to submit his pretrial submissions. Dkt. No. 88.  That order noted that "Plaintiff's failure to comply with the Court's scheduling order is not excused." *Id.*  In the wake of that order, Mr. Goodman filed his proposed pretrial submissions, including proposed voir dire questions and requests to charge.  Dkt. Nos. 89–91. Those submissions did not comply with the Court's Individual Rules or the Trial Order, because they were not jointly composed.

Mr. Goodman's October 20, 2025 submissions included a proposed pretrial order.  Dkt. No. 89.  As required by the Court's rules, Mr. Goodman's proposed pretrial order contained a list of the witnesses he would call at trial in support of his claim.  That list included Ms. Dabah, but Plaintiff did not identify himself as one of the witnesses who he would call to support his claim.  *Id.* at 4.

The Court held a conference on October 21, 2025 to discuss Plaintiff's request for an extension of the deadlines.  The Court made clear that it did not excuse Plaintiff's failure to comply with the Trial Order.  Dkt. No. 88.  However, the Court agreed to accept and consider the late pretrial submissions from Plaintiff, despite the fact that in preparing them, Plaintiff had failed to comply with the Trial Order and the Court's Individual Rules without justification.  The Court also directed the parties to submit a revised, jointly composed, proposed pretrial order by October 28, 2025.  The parties filed a proposed joint pretrial order on October 28, 2025.  Dkt. No. 100.  For the first time, that order identified Mr. Goodman as one of Plaintiff's trial witnesses.  *Id.* at 4.  The joint pretrial order did not list deposition designations by either party.

Among Ms. Dabah's pretrial submissions was a motion *in limine* to preclude Plaintiff "from relying on or referencing" a video recording (the "Video") made by a security camera in the hallway outside of the Park Avenue Apartment.  Dkt. No. 86 at 1.  According to Plaintiff's counsel, the Video depicts Ms. Dabah "approaching Mr. Goodman's apartment with her phone out and crouching by the front door (where Mr. Goodman can be seen through the door's glass pane)."  Dkt. No. 99 at 2.  Ms. Dabah moved to preclude use of the Video at trial under Federal Rule of Civil Procedure 37 because Mr. Goodman had failed to produce it to her during discovery.

The Court ruled on the motion *in limine* on December 16, 2025.  *See generally* December 16, 2025 Tr.  During that conference, the Court found that "Plaintiff violated his discovery obligations by failing to disclose Exhibit 1 (the 'Video') timely."  *Id.* at 10:11–12.  And the Court found that Plaintiff had not demonstrated that his failure to comply with his discovery obligations was either "substantially justified" or "harmless" under Federal Rule of Civil Procedure 37(c)(1).  *Id.* at 12:22–24.  However, the Court concluded that precluding the Video was not an appropriate sanction because of the importance of the evidence, and because Ms. Dabah "ha[d] been in possession of the video for years" as it had been produced to her in the matrimonial proceeding.  *Id.* at 12:14–15:6.  As an alternative sanction to preclusion, the Court "reopen[ed] fact discovery to permit [D]efendant to conduct targeted discovery regarding the [V]ideo."  *Id.* at 15:9–10.  The Court allowed Defendant to submit written discovery requests related to the Video, and to "notice no more than one deposition regarding the [V]ideo to be conducted during the week of December 29, 2025."  *Id.* at 15:11–13, 15:15–17.

Before the Court adjourned the December 16, 2025 conference, counsel for Plaintiff disclosed to the Court, for the first time, that Mr. Goodman was residing in England and that he was unable to reenter the United States—

> THE COURT:  So that's all I wanted to take up.  You'll see a short order issued later today summarizing this decision granting, in part, and denying, in part, the motion *in*

9

*limine* and describing the outcome. Otherwise, I look forward to seeing the parties on Thursday. Please, be prepared to discuss the witness's testimony. . . . Anything else from the parties before we adjourn?

PLAINTIFF'S COUNSEL: There's one thing that I do want to raise now, because it comes to our attention. So, our client Mr. Goodman, was—you know, currently resides and lives in England, in London. And he was [h]ere in the United States for an extended period of time. And while he was here, he overstayed his visa, so when he left the country, he was removed from the country for overstaying his visa. We have looked into what needs to be done or what can be done [to] get him here for the trial, in person. And that, to us, looks to be more and more difficult. . . . We believe that your Honor would be able to order him back here simply for the trial and then ha[ve] him return immediately. And we wanted to just raise this as we try to figure out how and what the logistics are of this. And then the other option, of course, would be to have him testify remotely, but I, of course, just want to raise this with your Honor.

THE COURT: . . . So, thank you. I'm happy to entertain any request. I'll tell you, I've never done that, and I don't know what my authority is to do that, so I will ask you to educate me about that. And when I say "that," I'm referring to my ability to order someone who is abroad to be admitted to the United States. I would be very interested in learning what the authority of this Court is to do so. So, if you have an application to make, I would ask you to make it promptly. Realistically, the application would probably need to be made no later than this coming Monday, probably better if sooner. Because, again, I don't know. I'm not familiar with the law that would authorize me to override the Executive Branch's constraints on immigration, and I'll need to do the work before trying to do anything along those lines.

*Id.* at 19:6–21:4 (citation modified). The Court instructed Mr. Goodman that any application for Mr. Goodman to testify remotely should be made "promptly" and no later than Monday, December 22, 2025, and advised the parties to meet and confer on the issue. *Id.* at 20:22–21:25.

Two days later, on December 18, 2025, the Court held the final pretrial conference. Because Plaintiff had not yet moved to testify remotely, and because Plaintiff had not advised the Court that his client would testify by any means other than in-person, at the end of the conference, the Court raised the issue itself. December 18, 2025 Final Pretrial Conf. Tr. ("FPTC Tr.") at 70:21–24. The Court cautioned that it had not yet authorized Mr. Goodman to testify remotely, and that its "expectation is that everybody will be here [for trial] testifying" in-person, and that allowing Mr. Goodman to testify remotely is "not permitted by default." *Id.* at 70:13–20.

10

The Court also cautioned that "Rule 43 requires compelling circumstances and good cause," and that it had not yet "made either finding, nor has any showing been made to [the Court] sufficient to allow [it] to do so up to this point." *Id.* at 70:21–25.  In response to the Court's reminders, the following exchange occurred:

> PLAINTIFF'S COUNSEL:  I'll comment on that your Honor.  Our firm does have some immigration counsel who are working on this to try to see what the avenues are, either through a waiver through the State Department, or to come to Your Honor, if there's a pathway there, to ask that he be ordered here for the trial, and then removed and sent back to England afterward.  Once we get their definitive answer on what the options are, we will be making a motion to this Court.  But, as it currently stands, he is not allowed in the country, because he overstayed his visa.
>
> THE COURT:  Thank you. . . .  There's not much time for you to get leave from the Court to have him proceed by remote means.  I will just note my expectation is that experienced counsel from a firm of great repute like yours knows that depositions are available to secure the testimony of a witness that's unavailable.  I assume that any application to the Court addressing whether there's good cause and compelling circumstances will explain why no such steps were taken, why failure to take such steps undermines a potential finding of compelling reasons and good cause, and why, to the extent that the assumption was made that the plaintiff could overstay his visa in the United States, I should view that as compelling circumstances.

*Id.* at 71:3–72:2.

On December 22, 2025, Plaintiff filed a motion under Rule 43(a) requesting that Mr. Goodman be permitted to testify by videoconference at trial.  Dkt. No. 114 (notice of motion); Dkt. No. 116 ("Mem.").  In his motion, Plaintiff argued that "immigration barriers preventing lawful entry constitute good cause and compelling circumstances within the meaning of Rule 43(a)."  Mem. at 3.  In support of his argument, Plaintiff cited several cases in which such testimony had been permitted because of a witnesses' inability to travel to the United States.  *Id.*  Notwithstanding the Court's specific invitation for Plaintiff to address why he did not choose to secure Mr. Goodman's testimony through deposition, Plaintiff's memorandum provided no detail on that question.  Nor did the memorandum of law provide any other arguments based on the specific circumstances of Mr. Goodman's case—including relevant topics such as his financial means, the capacity of his

11

counsel, or the amount of time during which he was aware of his inability to travel to the United States. Nor did he make a request to conduct a deposition of Plaintiff to secure his testimony for trial.

Plaintiff argued that failure to permit Plaintiff to testify by video would prejudice his ability to develop his case at trial because "Mr. Goodman's personal testimony is central to liability, causation, and damage." *Id.* at 5. He argued that not permitting testimony would "reward happenstance immigration barriers rather than the merits." *Id.* at 6. Mr. Goodman asserted that, if permitted to testify by video, he would implement "[a]ppropriate [s]afeguards," including, a "court[-]approved videoconferencing platform[,]" "a neutral on site facilitator[,]" and a "private location free from off camera communications[.]" *Id.* at 7.

Mr. Goodman filed a declaration in support of his motion. In it, he explained why he could not enter the country to testify live at trial. *See generally* Dkt. No. 115 ("Goodman Decl."). In his declaration, Mr. Goodman affirmed that he "previously entered the United States on January 2nd 2020, on an ESTA Tourist Visa and remained in the United States while engaged in a matrimonial proceeding commenced on or about May 27th, 2020. . . ." *Id.* ¶ 6. Mr. Goodman affirmed that "I inadvertently[2] overstayed my visa during that litigation because I believed that departing the United States would materially prejudice my ability to participate and protect my rights in the matrimonial action." *Id.* ¶ 7.

Mr. Goodman affirmed that he departed the United States "[o]n or about September 20, 2022 . . . to attend [his] son's wedding in Europe." *Id.* ¶ 9. Mr. Goodman affirmed that because he overstayed his visa, he became inadmissible to the United States for a period of ten years. *Id.* ¶ 10;

---

[2] The principal meaning of the word "inadvertent" is "unintentional." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/inadvertent (last visited Jan. 1, 2026). Given that Mr. Goodman affirmed that he overstayed his visa because he believed that doing so was necessary to achieve a desired goal, his use of the word "inadvertent" is, at best, inapt.

12

Dkt. No. 115-1.  As a result, Mr. Goodman applied for a nonimmigrant visa and a waiver of ineligibility.  Goodman Decl. ¶ 11; Dkt. No. 115-1.  By letter dated June 22, 2023, the United States Embassy in the United Kingdom informed Mr. Goodman that that the Department of State recommended Mr. Goodman's case for a waiver of ineligibility, but that the Department of Homeland Security had denied the request.  Dkt. No. 115-1.  Accordingly, the Department of State wrote:  "This means that you will not be receiving a non-immigrant visa *at this time*.  I regret that our response could not be more favorable *at this time*."  *Id.* (emphasis added).  On the basis of this 2023 letter, Mr. Goodman affirmed two years later that "as a result, I cannot lawfully enter the United States at this time."  Goodman Decl. ¶ 13.  Mr. Goodman's declaration does not indicate that he made any efforts to enter the country in the two years after 2023—in particular, it does not indicate that he made any efforts to obtain a waiver to enter the country to testify in the long-scheduled trial of this case.

Ms. Dabah filed her opposition on December 27, 2025.  Dkt. No. 123 ("Opp'n").  In it, she argued that Mr. Goodman had not satisfied Rule 43(a)'s requirements for a number of reasons.  First, "because Mr. Goodman's immigration status was 'reasonably foreseeable' and known to him years before trial."  *Id.* at 2–3.  Second, she argued that Mr. Goodman failed to take any steps to preserve his testimony through a deposition.  In support of her argument, she pointed to the notes to Rule 43, which describe deposition testimony as "superior" to contemporaneous transmission; as well as caselaw denying applications for remote testimony where no efforts were taken to secure the testimony by deposition pursuant to Rule 30.  *Id.* at 4–5.  Third, Defendant pointed to the prejudice to her case should Plaintiff be permitted to testify remotely at this late stage of the case.

Finally, anticipating a possible argument by Plaintiff that he never ultimately advanced, Ms. Dabah argued that the Court should not permit Plaintiff to use the deposition of Mr. Goodman taken by Defendant on December 26, 2025.  *Id.* at 7.  Defendant conducted that limited purpose

deposition pursuant to the Court's December 16, 2025 order permitting the parties to engage in targeted discovery regarding the Video, to remediate the prejudice resulting from Plaintiff's unjustified failure to disclose it during the discovery period.

Mr. Goodman did not file a reply. As a result, he has provided no information that responds to Defendant's arguments.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 43(a) reads in full as follows:

> **In Open Court.** At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a). Rule 43 reflects a strong preference for in-person testimony "so that there will be an opportunity for live cross-examination and observation of the demeanor of the witness." *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1973); *see also Savinova v. Nova Home Care, LLC*, No. 3:20-cv-01612, 2025 WL 1279076, at *2 (D. Conn. May 4, 2025) (same). "The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Fed. R. Civ. P. 43(a), advisory committee's note to 1996 amendment ("1996 Committee Note").

However, the rule contains an exception. "Under Federal Rule of Civil Procedure 43(a), 'the judge has discretion to allow live testimony by video for good cause in compelling circumstances and with appropriate safeguards.'"[3] *Rodriguez v. Gusman*, 974 F.3d 108, 114 (2d Cir. 2020) (quoting *Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018)); *see also* Fed. R. Civ. P. 43(a). Remote

---

[3] And "'[t]he Court's discretion on this question is supplemented by its wide latitude in determining the manner in which evidence is to be presented under the Federal Rules of Evidence.'" *Savinova*, 2025 WL 1279076, at *3 (quoting *Argonaut Ins. Co. v. Manetta Enterps., Inc.*, No. 1:19-cv-00482, 2020 WL 3104033, at *1 (E.D.N.Y. June 11, 2020) (quoting *In re RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020))).

14

testimony "cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." 1996 Committee Note. "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for *unexpected* reasons[.]" *Id.* (emphasis added). "A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.*

"Other possible justifications for remote transmission must be approached cautiously." *Id.* The advisory committee note to Rule 43(a) counsels in favor of using depositions rather than video testimony:

> Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses. Deposition procedures ensure the opportunity of all parties to be represented while the witness is testifying. An unforeseen need for the testimony of a remote witness that arises during trial, however, may establish good cause and compelling circumstances.

1996 Committee Note. "Rules 43(a) and 32(a) are meant to compl[e]ment each other. . . ." *RLS Associates, LLC v. United Bank of Kuwait PLC*, 2005 WL 578917, at *7 (S.D.N.Y. 2005).

Parties seeking to use remote testimony by video at trial should provide prompt notice of their desire to do so. "Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known, to enable other parties to arrange a deposition, or to secure an advance ruling on transmission." *Id.*

## IV.   DISCUSSION

Under these circumstances, the Court concludes that that it should not exercise its discretion to permit Mr. Goodman to testify by remote means. First, Mr. Goodman has not shown good cause and compelling reasons to permit remote testimony, because the circumstances that led to his unavailability have long been known to him and he took no steps to secure his testimony by

15

deposition or otherwise. Second, Mr. Goodman did not provide timely notice of his request—moving to testify remotely only two weeks before trial. As a result, the Court is unable to implement safeguards to permit his remote testimony.

### A. Plaintiff Has Not Shown Good Cause or Compelling Circumstances

Mr. Goodman has not shown good cause or compelling circumstances to permit his testimony by video at trial. Mr. Goodman's immigration status and corresponding inability to reenter the United States to attend trial are far from "unexpected;" they were long-known. Mr. Goodman left the United States in 2022. Goodman Decl. ¶ 9. He averred that his decision to overstay his visa made him ineligible for return. *Id.* ¶ 9. He later applied for a waiver so that he could return to the United States, but was denied by letter dated June 22, 2023. *Id.* ¶¶ 11-12. The prospect that Mr. Goodman could not enter the country to testify at the trial of this action has been known to him for years. Because Mr. Goodman has known of his visa difficulties for years, there is nothing "unexpected" or "compelling" about the circumstances rendering him unable to testify in-person at trial. *See Matovski v. Matovski*, No. 6 Civ. 4259, 2007 WL 1575253, at *3 (S.D.N.Y. May 31, 2007) (concluding that "[t]here is nothing 'unexpected' or 'compelling'" about the witnesses' alleged inability to testify in-person at trial where the "burden to the [eight] witnesses has been known to petitioner from the inception of this proceeding" and where petitioner "has known of his visa difficulties for 10 months"); *see also Hernandez v. Day Break Inc.*, No. 15-CV-6693, 2018 WL 11489812, at *2 (E.D.N.Y. Nov. 9, 2018) ("The Court concludes by noting that Plaintiff—and, most importantly, his counsel—have known that these issues [related to his visa] would arise for over two years.").

Second, Mr. Goodman failed to provide "[n]otice of a desire to transmit testimony from a different location . . . as soon as" he knew he would be unable to reenter the United States to testify at trial. 1996 Committee Note. Mr. Goodman has known for years that he could not enter the

16

United States. He affirmed that for that reason, he appeared on Teams in his matrimonial action several times. Goodman Decl. ¶ 17. So, Mr. Goodman was clearly aware that he could not appear to testify in the United States, and that arrangements could be made with a court to permit remote testimony. Still, he did not file a motion to permit his testimony by remote means until December 22, 2025—exactly two weeks before the beginning of trial, and in a period that straddled the Christmas and New Years holidays. *See* Dkt. No. 14.

That this request was extremely late is clear. What is also unusual is Plaintiff's counsel's nonchalant approach to developing the issue for consideration by the Court. On October 20, 2025, Mr. Goodman's lawyers proposed a witness list to the Court. In it, they indicated that they did not intend to call Mr. Goodman as a witness. Dkt. No. 89. It was not until their October 28, 2025 submission that they identified that they wished to call him to testify at all. Dkt. No. 100. In that submission, Plaintiff's counsel did not signal that there were any issues with his ability to testify live at trial. *See generally id.* The requirement that the parties provide the Court a witness list in a proposed joint pretrial order provided an excellent opportunity for counsel for Plaintiff to raise the issue. They did not take it.

Mr. Goodman's counsel did not raise the issue of his immigration status until December 16, 2025. December 16, 2025 Tr. at 19:20-20:13. That conference was scheduled by the Court on short notice for another purpose. At the end of the conference, counsel informed the Court that they were seeking to have him admitted to the United States to testify and that he understood that the Court could order Mr. Goodman's entry into the United States for that purpose: "We wanted to just raise this as we try to figure out how and what the logistics are of this." December 16, 2025 Tr. at 20:9-10. So, as of December 16, 2025, Plaintiff's counsel believed that there was pathway for Mr. Goodman to appear to testify live. Counsel for Plaintiff's failure to "figure out what the logistics

are" of obtaining the testimony of their client for a trial that had been scheduled eight months before that date is troubling.

On December 18, 2025, at the Court's prompting, Plaintiff's counsel discussed the issue of his client's availability.  At that time, Plaintiff's counsel represented that lawyers at his firm were actively working to see if Mr. Goodman could enter the country.  The Court set a schedule for a motion for Plaintiff to be permitted to appear by remote means on its own initiative; Plaintiff's counsel did not request one.

Plaintiff's notice was untimely.  Mr. Goodman did not file his motion until December 22, 2025—just two weeks before trial was scheduled to begin.  Mr. Goodman offered "no explanation as to why he waited until [just] before trial to make the request" to testify virtually.  *Donnelly v. Anand*, Nos. 21-cv-9652 & 24-cv-6320, 2025 WL 2494376, at *2-3 (S.D.N.Y. Aug. 29, 2025) (denying the defendant's request to appear at trial remotely where defendant argued that he was currently located in China, where he resides, and was "unable to travel to New York due to financial hardship and international travel constraints" partly because "the September 4, 2025 trial date was set in the Order of August 5, 2025, but [the defendant] did not request to appear remotely until August 28, 2025").  "Because 'the most persuasive showings' come when the need for remote testimony is prompted by '*unexpected* reasons,' courts often deny leave to testify remotely when the movant . . . has long known of the reasons for its motion yet failed to file it until the eve of trial.'" *Savinova*, 2025 WL 1279076, at *3; *Matovski*, 2007 WL 1575253, at *3 (denying motion in part where the motion was filed less than a month before trial).  Plaintiff's late notice weighs against the exercise of the Court's discretion to permit Mr. Goodman's testimony by remote means.

Finally, Plaintiff's argument that good cause and compelling circumstances exist that should permit him to testify remotely at trial is undermined by his failure to take any steps to preserve his testimony by deposition at any point during the extensive discovery period in this case.  Fact

18

discovery in this case closed on January 27, 2023—over two years after Mr. Goodman filed his case and over a year after he left the United States in 2022 after overstaying his visa. *See* Dkt. No. 32. Despite the lengthy period allotted for discovery in this case, which provided "ample opportunity" to conduct any depositions, Plaintiff's counsel never scheduled Mr. Goodman's deposition. *Matovski*, 2007 WL 1575253, at \*2. This weighs against granting Mr. Goodman leave to provide his testimony by remote means. *See, e.g.*, *Matovski*, 2007 WL 1575253, at \*2 ("[T]here has been ample opportunity for the petitioner to conduct *de bene esse* depositions of the witnesses residing in Australia. . . . A videotaped deposition . . . with respondent's counsel in the same room and able to conduct a cross-examination, including confrontation of the witness with documents, would have been vastly preferable to relegating the respondent's counsel to attempting to cross-examine a faceless voice at the end of a telephone line."); *United Realty Advisors, LP v. Verschleiser*, No. 14-cv-5903, 2022 WL 5251229, at \*1 (S.D.N.Y. Sept. 7, 2022) ("[P]laintiffs have failed to present good cause or compelling circumstances . . . [because the witness's unavailability] should have been known to them throughout discovery, at which point they could have preserved the testimony of the witnesses through depositions.").

Despite the Court's request, Plaintiff provided no explanation for his failure to secure his testimony by deposition in his moving papers. And he chose to file no reply in response to Defendant's opposition. Many potential explanations that might justify failure to take such steps and therefore support a finding of good cause do not apply here: Plaintiff had ample time to do the work; he is living in the United Kingdom, which does not appear to restrain the ability of parties to conduct voluntary depositions in support of United States litigation;[4] there is no suggestion that Mr.

---

[4] According to the State Department:

> Voluntary depositions of willing witnesses in civil and commercial matters are permitted regardless of the nationality of the witness. Oral depositions or depositions on written questions may be taken by U.S. consular officers or by private attorneys at the U.S. Embassy or at another location such as a hotel or office, either on

Goodman is facing financial constraints; he is represented by a several lawyers from a national law firm.[5]

The fact that Mr. Goodman is barred from the United States as a result of his immigration status does not by itself justify permitting him to provide remote testimony on this record. There is no question that a witness's immigration status can constitute good cause.[6] *Rodriguez*, 974 F.3d at 114 (collecting cases). But Mr. Goodman has not shown that good cause and compelling circumstances exist to permit his testimony here. As described above, his inability to testify at trial was "reasonably foreseeable"—he has known for years prior to trial that he could not reenter the United States and still failed to take any action to either inform the Court of his status or to procure

---

notice or pursuant to a commission. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. embassy directly.

United States Department of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/UnitedKingdom (last visited Jan. 2, 2026). Indeed, as described above, the parties were able to arrange for a remote video deposition of Mr. Goodman when the Court reopened discovery to permit Defendant to learn about the Video. That they were able to do so on short notice demonstrates that the barrier to conducting a deposition was low. Plaintiff didn't bother even to try.

[5] Lacking any explanation from Plaintiff regarding his failure to secure his testimony by deposition, the Court is left to speculate regarding the most likely reasons for his failure based on this record: Either it was negligence; because his counsel was unaware of the use of depositions to secure the testimony of a witness for trial and the strictures of Rule 43. Or it was tactical; because Plaintiff decided not to invest time and resources to a federal action he commenced. Neither justification would be compelling: inattention by counsel does not constitute good cause; nor does a tactical decision not to invest in a case by a party.

[6] Mr. Goodman's argument relies almost entirely on the Second Circuit's statement in *Rodriguez* that "circuit and lower courts alike have found a witness's immigration status to constitute good cause." *Rodriguez*, 974 F.3d at 114. Mr. Goodman reads too much into that one sentence in *Rodriguez*. The question presented in *Rodriguez* was not whether the district court erred in applying Rule 43(a)—indeed, Rule 43(a) was not directly at issue at all—but rather whether the district court erred in administratively closing a case after the plaintiff was deported following his release from prison and thereby unavailable to testify. When the Second Circuit's reference to Rule 43(a) is read in context, context shows that the Second Circuit was discussing how administrative closure "is a last resort that is appropriate only when [all other] alternatives are virtually impossible," including an alternative such as Rule 43(a). *Id.* at 110. Indeed, language from earlier in that opinion makes clear that any reference to Rule 43(a) was merely to identify that "on [that] [] record, numerous alternatives to the issues identified by the district court exist" and that the district court should have considered those alternatives, including allowing virtual testimony under Rule 43(a), before administratively closing the case. *Id.*

And *Rodriguez* is distinguishable from Mr. Goodman's case on the facts. In contrast to this case, the Second Circuit in *Rodriguez* specifically noted that "[t]here is no evidence in the record to suggest the appropriate safeguards would be unavailable," which is not the case here, as discussed further below. *Id.* at 114. And *Rodriguez* involved a witness who was deported from the United States and prohibited from reentering following his release from incarceration. *Id.* at 111. By contrast, Mr. Goodman was not deported, rather he chose, voluntarily, to "overstay[] [his] visa." Goodman Decl. ¶ 7.

20

his testimony though alternative means prior to trial.  *See Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 447 (S.D.N.Y. 2012) ("The legal infeasibility of attending a deposition or trial in person because of one's immigration status rises to the level of compelling circumstances since [the plaintiff] cannot be compelled to attend without either securing requisite authorization or violating immigration laws.").  And there were no constraints on Plaintiff's ability to secure his testimony by deposition during the extended life of this case.

Nor did Mr. Goodman take any proactive steps to come to the United States to testify at this trial.  According to his affidavit, Mr. Goodman was last denied entry to the United States in June 2023.  Goodman Decl. ¶ 12; Dkt. No. 115-1.  The letter explained that he could not obtain a waiver "at this time[;]" it did not foreclose a later application.  Dkt. No. 115-1.  His counsel proffered that his firm was exploring the possibility of obtaining a waiver in December of 2025—just weeks before trial.  FPTC Tr. at 71:3-8.  But there is no evidence that he took any affirmative steps to obtain permission to testify in person in this case in the period between 2023 and December 2025.  Mr. Goodman does not argue that he has financial constraints on his ability to take such steps, or that there was no legal avenue to pursue.  He and his counsel simply did not do so.

Mr. Goodman's argument that preventing him from testifying remotely would prejudice[7] his case because his "personal testimony is central to liability, causation, and damage" is not persuasive.  Mem. at 5.  The Court has weighed the prejudice to Mr. Goodman's case in the event that he is unable to testify:  a decision by the Court not to exercise its discretion to invoke the exception to the default rule requiring live testimony will prejudice the plaintiff.  But of course, that the testimony of a plaintiff can be beneficial to his case at trial cannot be news to Plaintiff and his counsel.  Mr. Goodman could have, at any point during the lengthy period allotted for discovery in this case,

---

[7] The Second Circuit has "note[d] that the absence of a party from part or all of a civil trial is not *per se* prejudicial." *Payne v. Jones*, 711 F.3d 85, 91 (2d Cir. 2013) (citing *Lamb v. Globe Seaways, Inc.*, 516 F.2d 1352, 1353 (2d Cir. 1975)).

appeared by deposition had he chosen to do so.  But Plaintiff never noticed a deposition for Mr. Goodman, or anyone else for that matter.  Dkt. No. 70 at 2-3 ("Plaintiff did not take any depositions[.]"); Dkt. No. 72.  "If his testimony was important to the plaintiff's case, the plaintiff[] should have preserved that testimony through a deposition taken in the course of discovery."  *United Realty Advisors, LP*, 2022 WL 5251229, at *1.  Rather than notice Mr. Goodman's deposition in the first instance, "[p]laintiff now seeks to correct the problem caused by" his failure to depose Mr. Goodman "with a double-fix:  to have him testify at trial (which would solve the problem caused by the[] failure to depose him) via videoconferencing (which would solve the problems caused by his being located overseas)."  *Christians of Calif., Inc. v. Clive Christian New York, LLP*, No. 13-cv-275, 2014 WL 6467254, at *5 (S.D.N.Y. Nov. 10, 2014).  But "a party's failure to depose or question an individual . . . does not thereby entitle them to have that individual testify at trial via videoconferencing."  *Id.* at *4.

The prejudice to Mr. Goodman is somewhat mitigated because he has other witnesses and evidence to present at trial to support his claim.  First, Mr. Goodman plans to introduce the Video.  Dkt. No. 100.  According to him, the Video displays Ms. Dabah recording him.  *Id.* at 5.  Mr. Goodman has not proffered that he saw her recording him.  And Mr. Goodman has listed his Rabbi and his divorce attorneys as witnesses.  *Id.* at 4.  Mr. Goodman's counsel has proffered that he expects that they will testify about the fact that Mr. Goodman was speaking with them while Ms. Dabah was recording him.  FPTC Tr. at 50:10-23, 51:6-13.  And while Plaintiff's trial strategy has evolved since December 18, 2025, counsel for Plaintiff proffered during the final pretrial conference that Mr. Goodman's therapist would testify about the conversation and potentially its effect on Plaintiff's mental health.  *Id.* at 51:16-23.

There is no question that Plaintiff's failure to secure his testimony at trial and lack of effort to do so will prejudice his case.  But he can still present his case through his documentary evidence

22

and the other witnesses who he has identified.  Accordingly, on these facts, Mr. Goodman has not demonstrated good cause or compelling circumstances as required under Rule 43(a).

And, as Ms. Dabah contends, she would be prejudiced by allowing Mr. Goodman to testify remotely "given the late notice and proximity to the trial date" because she would be deprived of the opportunity to judge Mr. Goodman's demeanor face-to-face and because live, remote testimony risks "'caus[ing] unnecessary delays-problems.'"  Opp'n at 6–7 (quoting *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 1 Civ. 1290, 2005 WL 578917, at *7 (S.D.N.Y. Mar. 11, 2005) (directing parties to obtain deposition testimony rather than contemporaneous transmission of testimony in court because the latter would be "highly inconvenient, due to the large time difference between New York and Dubai" and due to a "greater likelihood of technical problems arising"), *adhered to on reconsideration*, 464 F. Supp. 2d. 206 (S.D.N.Y. 2006)).

Earlier in the history of this case, the Court denied Defendant's motion to dismiss the case because of Plaintiff's failure to pursue discovery or otherwise act to advance this litigation.  Dkt. No. 77.  In response to the motion, Plaintiff argued that Defendant had "entirely failed to articulate how the alleged failure of Mr. Goodman to pursue discovery . . . is likely to prejudice her. . . ."  Dkt. No. 72 at 11.  The Court denied Defendant's motion, observing that "Plaintiff was free to choose not to take discovery during the discovery period.  An informed decision by Plaintiff, represented by competent counsel, not to expend resources during the discovery period does not represent a failure to prosecute, much less one that harms Defendant."  May Tr. at 11:23–12:7.  Plaintiff was free to elect not to use the tools available to him during the discovery period to advance this litigation.  But in exercising its discretion now, the Court does not believe that it should reward that tactical decision in a way that prejudices Plaintiff's adversary.

23

**B.  On the Eve of Trial, Implementing Appropriate Safeguards Is Impracticable**

Given Plaintiff's late request, the Court cannot ensure that his testimony can be taken with appropriate safeguards.  Even when a "Rule 43(a) movant[] establishe[s] 'good cause' and 'compelling circumstances,' that does not end the inquiry because the issue of 'appropriate safeguards' still needs to be addressed."  *Savinova*, 2025 WL 1279076, at *3 (quoting Fed. R. Civ. P. 43(a)).  This is so because "there are procedural and administrative hurdles that accompany witness testimony via videoconference technology."  *Medina v. Angrignon*, No. 15-CV-427, 2024 WL 108669, at *4 (W.D.N.Y. Jan. 10, 2024).  "Such safeguards [may] include, for example, ones for administering the oath, verifying the identity of the witness, protecting against influence (coaching) by persons present with the witness, and providing for accurate video and audio transmission."  *Id.*  "Courts also expect the proponent of the remote testimony to ensure that it will be smoothly presented by, among other things, testing the communication set-up in advance."  *Savinova*, 2025 WL 1279076, at *3 (citing *Sawant v. Ramsey*, No. 3:07-cv-980, 2012 WL 1605450 (D. Conn. May 8, 2012)).

Mr. Goodman argues that "appropriate safeguards are readily achievable here" and proposes the following safeguards:  "a secure, court approved videoconferencing platform with real time transmission; a neutral on site facilitator to administer the oath, verify identity, and monitor the setting; a quiet, private location free from off camera communications; uninterrupted camera views of the witness and surroundings during examination; stable internet connectivity with redundant backup; procedures for marking, displaying, and sharing exhibits electronically; and protocols for addressing objections in real time."  Mem at 7.

Had Mr. Goodman made his request at the time of the submission of the proposed joint pre-trial order or earlier, the Court is likely to have been able to develop a process with appropriate safeguards.  At this point in the litigation however, the safeguards Mr. Goodman proposes are not "achievable" because they cannot practically be implemented.  *City of Almaty, Kazakhstan v. Ablyazov*,

24

No. 15-cv-5345, 2022 WL 17156623, at *1 (S.D.N.Y. Nov. 21, 2022) (conditioning a witness's remote testimony at trial on the witness's "avail[ability] for a deposition from Russia" because "his deposition ha[d] not been taken, and the Court has no way of assuring at this point that effective testimony can be transmitted from Russia.").

While the Court has been preparing for trial in this matter over the New Year holiday, the Court itself was closed, and court staff, including IT staff, were unavailable. There is simply no time to make arrangements to ensure that Mr. Goodman's technology will work with the Court's. Nor is there time to ensure that documents to be presented to him for impeachment by Defendant can be presented to him during his testimony. These hurdles can be overcome, but not in two three-day work weeks over the Christmas and New Year's holiday. Mr. Goodman's failure to provide prompt notice of his request to the Court makes it impractical for the Court to implement appropriate safeguards on time for Monday's trial.

## V.   CONCLUSION

"One naturally expects the plaintiff to be present and ready to put on her case when the day of trial arrives.  A litigant's day in court is the culmination of a lawsuit, and trial dates—particularly civil trial dates—are an increasingly precious commodity in our nation's courts." *Lewis v. Rawson*, 564 F.3d 569, 580 (2d Cir. 2009) (quoting *Moffitt v. Illinois State Bd. of Educ.*, 236 F.3d 868, 873 (7th Cir. 2001)).  But Plaintiff has not treated his appearance at the upcoming trial as a precious commodity.  He made no meaningful efforts to obtain his presence or his testimony.  Plaintiff was free to elect not to use the tools available to him to advance this litigation.  But in exercising its discretion now, the Court does not believe that it should reward that tactical decision in a way that prejudices Plaintiff's adversary.  For the foregoing reasons, Plaintiff's motion for video testimony at trial is DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 114.

SO ORDERED.

Dated: January 2, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

26